# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 15-10227

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

SERGIO GODINEZ, also known as E. T.,

Defendant-Appellant.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 4:14-CR-208

United States Court of Appeals
Fifth Circuit

**FILED**

February 29, 2016

Lyle W. Cayce
Clerk

Before STEWART, Chief Judge, and OWEN and COSTA, Circuit Judges.

PER CURIAM:*

Defendant-Appellant pled guilty as charged in the indictment with conspiracy to possess with intent to distribute 100 grams or more of heroin. The district court imposed a sentence of 180 months' imprisonment and a 4-year term of supervised release. We affirm.

## I. FACTS & PROCEDURAL HISTORY

Defendant-Appellant Sergio Godinez was charged by indictment with conspiracy to possess with intent to distribute 100 grams or more of a mixture and substance containing a detectable amount of heroin in violation of 21

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 15-10227

U.S.C. § 846. In accordance with a plea agreement, he pled guilty to that offense. In determining his base offense level at sentencing, the district court held Godinez accountable for heroin and methamphetamine amounts that had a marihuana equivalency of 6,433.2 kilograms. Based on that drug quantity, Godinez had a base offense level of 32 pursuant to the Sentencing Guidelines drug quantity table. *See* U.S.S.G. § 2D1.1(c)(4) (applying base offense level of 32 to offenses involving "[a]t least 3,000 KG but less than 10,000 KG of Marihuana"). The drug amounts for which Godinez was held responsible included 1,275 grams of heroin and 1,275 grams of methamphetamine that he allegedly obtained from an unidentified confidential informant ("CI").

Godinez objected to the use of the information provided by the CI because it was uncorroborated and unsupported by other information or evidence. The district court overruled the objection at sentencing. In the Presentence Report ("PSR") addendum, the Government stated that the information regarding the drug quantities in Paragraphs 19 and 20 was provided by a CI that law enforcement had deemed reliable, and that reliability was further confirmed by an interview between the Probation Officer ("PO") who compiled the PSR and the case agent. The Government also stated that the case agent would be available to testify as to the reliability of the information provided by the CI.[1]

The district court also applied a 2-level sentencing enhancement pursuant to U.S.S.G. § 2D1.1(b)(5) based on a finding that Godinez knew that the methamphetamine involved in the offense was imported from Mexico. The district court also applied a 2-level enhancement pursuant to § 2D1.1(b)(12) because Godinez maintained a premises for the purpose of manufacturing and distributing a controlled substance.[2] Additionally, Godinez received a 3-level

---

[1] For reasons that are unclear from the record, the case agent never testified at sentencing.

[2] Godinez does not challenge this particular enhancement on appeal.

2

reduction due to acceptance of responsibility.  With a criminal history category of II, the total offense level was calculated to be 35, resulting in a Guidelines range of 188 to 235 months.

The district court imposed a sentence of 180 months' imprisonment followed by a 4-year term of supervised release.  In imposing this sentence, the district court varied downward from the Guidelines range in order to give Godinez credit for time served on a related case.  The district court clarified that it had extensively considered the Section 3553(a) sentencing factors and found the 180-month sentence imposed to be appropriate in light of "all of the facts and circumstances."  *See* 18 U.S.C. § 3553(a).  It went on to state that the sentence would provide just punishment and protect the public from Godinez's future criminal activity, pointing to the large amount of heroin at issue and Godinez's possession of an AK-47.  The district court expressed that even if it had erred in overruling any of Godinez's objections, it would have nevertheless imposed the same sentence in light of the Section 3553(a) sentencing factors.

Godinez filed this appeal challenging the district court's calculation of drug quantities contained in Paragraph 19 of the PSR and the 2-level enhancement applied pursuant to § 2D1.1(b)(5), based on the drugs at issue having been imported from Mexico.

## II. DISCUSSION

We review the sentence imposed for abuse of discretion.  *Gall v. United States*, 552 U.S. 38, 51 (2007).  We must "ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range."  *Id*.  The district court's interpretation and application of the Guidelines are reviewed de novo, while its factual findings are reviewed for clear error.  *United States v. Hernandez-Galvan*, 632 F.3d 192, 196 (5th Cir. 2011) (citation and internal quotation marks omitted).  If the court finds a significant procedural error, it must

remand for resentencing unless the error was harmless.  *United States v. Delgado-Martinez*, 564 F.3d 750, 752–53 (5th Cir. 2009).

### A. Drug Quantity

Godinez's first argument on appeal pertains to the drug quantities calculated by the district court wherein it relied on the information conveyed in Paragraph 19 of the PSR that was provided by the CI.  He argues that the CI's out-of-court statements attributing the drug quantities to him were not sufficiently corroborated by anything in the record.[3]  We disagree.

The quantity of drugs attributable to a defendant includes both drugs with which the defendant was directly involved and drugs that can be attributed to him in a conspiracy as part of his "relevant conduct" under U.S.S.G. § 1B1.3(a)(1)(B).  *See United States v. Duncan*, 191 F.3d 569, 576 (5th Cir. 1999).  The district court's determination of drug quantity for sentencing purposes is a factual finding that this court reviews for clear error.  *See United States v. Harris*, 740 F.3d 956, 966–67 (5th Cir. 2014) (citation omitted).  A factual finding is not clearly erroneous if it is plausible in light of the record read as a whole.  *See United States v. Cisneros-Gutierrez*, 517 F.3d 751, 764 (5th Cir. 2008) (citation omitted).

In making factual determinations at sentencing, the district court "may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, provided that the information has sufficient indicia of reliability to support its probable accuracy."  U.S.S.G. § 6A1.3(a), p.s.  This court has interpreted this specific guideline as requiring that all facts used for sentencing purposes be "reasonably reliable."  *United States v. Shacklett*, 921 F.2d 580, 584–85 (5th Cir. 1991).  "[T]he district court

---

[3] Godinez makes no argument regarding the cause for non-disclosure of the CI's identity and instead focuses on the lack of corroboration for the CI's statements.

has significant discretion in evaluating reliability." *United States v. Young*, 981 F.2d 180, 185 (5th Cir. 1992) (citation omitted). "Out-of-court declarations by an unidentified informant may be considered where there is good cause for the non-disclosure of the informant's identity and there is sufficient corroboration by other means." *Id.* at § 6A1.3, p.s., commentary; *see United States v. Rogers*, 1 F.3d 341, 343–44 (5th Cir. 1993).

A PSR generally bears sufficient indicia of reliability to be considered as evidence by a sentencing judge when making factual determinations. *United States v. Narviz-Guerra*, 148 F.3d 530, 537 (5th Cir. 1998) (citation omitted). However, "[b]ald, conclusionary statements do not acquire the patina of reliability by mere inclusion in the PSR." *Id.* (internal quotation marks and citation omitted). When such statements lack corroboration, this court cannot assure itself that "the PSR contains sufficient indicia of reliability." *Id.*

Paragraph 19 of the PSR states:

> From March 2012 to August 2013, **Godinez** used four known suppliers. His most significant relationship occurred in 2012 with an unindicted individual whose name is redacted. For six months, in 2012, **Godinez** received deliveries from this individual. These deliveries consisted of ¼ ounce of heroin and ¼ ounce of methamphetamine, per trip, and happened as often as two or three times per day. *Using a conservative estimate of ¼ ounce of heroin and methamphetamine, once per day, for a period of six months,* ***Godinez*** *received 1,275 grams of heroin and 1,275 grams of methamphetamine from this individual.*

(emphasis in original). According to the record, in preparing the PSR, the PO gathered information from the indictment, Godinez's factual resume, investigative material compiled and prepared by law enforcement officers, and an interview with the case agent. In his interview with the PO, the case agent clarified and corroborated the information contained in the investigative

material used to compile the PSR. Additionally, law enforcement officers represented that they deemed the CI to be reliable.

The information in Paragraph 19 was also corroborated by other information contained in the PSR, including a description of a controlled drug buy at Godinez's home and information gathered from other sources[4] and codefendants about Godinez's extensive involvement in drug-trafficking, including the overall scheme of conduct and the roles of the various coconspirators. *See Rogers*, 1 F.3d at 343–44 (finding no clear error in relying on confidential informants' hearsay reports that were partially incorrect but partially corroborated by extensive government investigation). Finally, the amount of drugs concluded to be at issue in Paragraph 19, as relied on by the district court, was estimated conservatively relative to the initially described representations of the CI, *i.e.*, a quarter ounce of heroin and methamphetamine, once per day, for six months, as opposed to a quarter ounce of heroin and methamphetamine, two to three times per day, for six months. *See Young*, 981 F.2d at 184–86 (finding no clear error where the district court relied on double and triple hearsay from CIs corroborated and vouched for by two police officers, but halved the amount of drugs attributed to each defendant in order to account for possible exaggeration).

In light of the PO's interview with the case agent wherein the agent clarified and corroborated the information found in the investigative material relied upon to compile the PSR, we hold that the information contained therein, including the description of the CI's involvement as contained in Paragraph 19, is "reasonably reliable." *Shacklett*, 921 F.2d at 585. Further, given that law enforcement officers deemed the CI reliable and the district court's "significant discretion in evaluating [the] reliability" of that

---

[4] The identities of these sources are also protected.

information, we see no clear error in its calculation of the drug quantities, relying on the information contained in Paragraph 19 of the PSR. *See Young*, 981 F.2d at 185.

### B. Importation Enhancement

Next, Godinez challenges the district court's application of a 2-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(5)[5] based on its finding that Godinez knew that the methamphetamine involved in the offense was imported from Mexico. Godinez does not dispute that the methamphetamine in this case was imported from Mexico, but rather, he asserts that there is no evidence that he had any personal knowledge regarding the importation of the drugs.

This court has held that the enhancement applies "regardless of whether the defendant had knowledge of that importation." *United States v. Serfass*, 684 F.3d 548, 552 (5th Cir. 2012). Thus, Godinez's argument that he had no personal knowledge of the importation of the drugs is foreclosed by binding precedent which we decline to revisit herein. *Id.*; *see also United States v. Lipscomb*, 299 F.3d 303, 313 & n.34 (5th Cir. 2002) (holding that a panel of this court may not overrule a decision made by a prior panel absent en banc consideration, a change in relevant statutory law, or an intervening decision by the Supreme Court). Accordingly, we uphold the district court's application of the 2-level enhancement pursuant to U.S.S.G. § 2D1.1(b)(5). *See Serfass*, 684 F.3d at 552.

### III. CONCLUSION

For the aforementioned reasons, we affirm the sentence imposed by the district court in all respects.

---

[5] If the offense of conviction "involved the importation of amphetamine or methamphetamine," a defendant's base offense level is increased by two levels.