## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 16-10235

United States Court of Appeals
Fifth Circuit

**FILED**

July 20, 2017

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

       Plaintiff - Appellee

v.

ISMAEL RICO,

       Defendant - Appellant

Appeal from the United States District Court
for the Northern District of Texas

Before REAVLEY, HAYNES, and COSTA, Circuit Judges.

HAYNES, Circuit Judge:

In this appeal of a criminal sentence, Defendant Ismael Rico challenges the application of two enhancements to his base offense level and the denial of a reduction for acceptance of responsibility. For the following reasons, we AFFIRM.

### I.

Defendant Ismael Rico pleaded guilty to conspiracy to possess with intent to distribute a controlled substance. In Rico's presentence investigation report ("PSR"), the probation officer assessed a base offense level of thirty-eight. The PSR also applied a two-level adjustment under United States Sentencing Guideline ("U.S.S.G.") § 2D1.1(b)(1) because the offense involved a

No. 16-10235

firearm; a two-level adjustment under U.S.S.G. § 2D1.1(b)(5) because the methamphetamine that Rico distributed had been imported; and a two-level adjustment under U.S.S.G. § 2D1.1(b)(12) on the basis that Rico maintained a premises for the purpose of distributing a controlled substance.[1]  Following a three-level reduction under U.S.S.G. § 3E1.1 for acceptance of responsibility, The PSR calculated Rico's total offense level as forty-one.  That total offense level, combined with a criminal history category of III, yielded a guidelines imprisonment range of 360 months to life.  But because the statutory maximum prison term was forty years, the guidelines range became 360 to 480 months.  *See* 21 U.S.C. §§ 841(b)(1)(B), 846; U.S.S.G. § 5G1.1(a); U.S.S.G. Ch. 5, Pt. A.

At sentencing, the district court denied the reduction for acceptance of responsibility, but otherwise adopted the PSR, resulting in a Guidelines range of 480 months due to the statutory maximum.  The district court sentenced Rico to 400 months in prison and a four-year term of supervised release.

II.

We review the interpretation of the Guidelines de novo and factual findings for clear error.  *United States v. Serfass*, 684 F.3d 548, 550 (5th Cir. 2012).  There is no clear error where the district court's finding is plausible in light of the record as a whole.  *United States v. Juarez-Duarte*, 513 F.3d 204, 208 (5th Cir. 2008) (per curiam).

A.

In his first issue on appeal, Rico challenges the two-level enhancement he received for importation of methamphetamine under U.S.S.G. § 2D1.1(b)(5).  More specifically, he maintains that the information in the PSR was insufficient to support a finding that the methamphetamine was from Mexico.

---

[1] According to the PSR, the November 1, 2014, version of the Guidelines was used.

2

No. 16-10235

Where a defendant has intentionally relinquished or abandoned a known right, the issue is waived. *United States v. Olano*, 507 U.S. 725, 733 (1993). Because Rico waived this objection, we cannot address it. *See United States v. Musquiz*, 45 F.3d 927, 931 (5th Cir. 1995) ("Waived errors are entirely unreviewable, unlike forfeited errors, which are reviewable for plain error.").

In his objections to the PSR, Rico contested that the methamphetamine was imported from Mexico. By his written objections, Rico essentially made two arguments: (1) he did not know the origin of the methamphetamine, and thus his base offense level could not be enhanced and (2) the information contained in the PSR was insufficient to support the enhancement because it was unreliable. Prior to the sentencing hearing, the district court entered an order tentatively concluding that Rico's objections were without merit. The district court stated that it was "advising the parties of such tentative conclusion so that it can be taken into account by the parties in determining what presentations to make at the sentencing hearing."

At the sentencing hearing, the district court asked Rico whether he "still want[ed] to pursue any of those objections." Counsel for Rico responded in the affirmative, but chose to pursue some, but not all, of the objections. He stated that, as to the importation enhancement, "that's a legal objection as to the standard used by the Fifth Circuit. We're simply making that objection to preserve it for later appeal." Counsel further conceded that he "agree[d] that . . . as the law stands now, *that is a proper finding*." (emphasis added). Indeed, when the court clarified whether "the issue is whether or not the law should be that the increase should not be applicable if he doesn't know it came from Mexico," counsel responded, "Yes, Your Honor." This exchange shows that, although Rico knew of his objection based on insufficient information, he consciously decided to forgo that objection at sentencing. Instead, he limited his objection to the standard applied by this circuit and acknowledged the

3

No. 16-10235

enhancement was proper under that precedent.  Accordingly, he waived his objection.  *See Musquiz*, 45 F.3d at 931.

Rico maintains that the tentative ruling was sufficient to preserve the issue on appeal.  We disagree.  The ruling was only a tentative one, intended to assist the parties in preparing for sentencing.  Contrary to Rico's suggestion, it was not meant to discourage pursuing objections; indeed, the district court began the sentencing hearing by explicitly asking Rico if he wanted to pursue any of his objections.  Again, Rico did so, but did not pursue all of them.  Accordingly, this is not a situation where further objection would have been futile.  *Cf. United States v. Gerezano-Rosales*, 692 F.3d 393, 399–400 (5th Cir. 2012).[2]

## B.

Rico next argues that the district court erred in applying an enhancement to his base offense level for "maintain[ing] a premises for the purpose of manufacturing or distributing a controlled substance," U.S.S.G. § 2D1.1(b)(12), because the information in the PSR was insufficiently reliable to support such a finding.  Because the information was sufficiently reliable to support the maintaining-a-premises finding, we affirm the application of the enhancement.

In assessing the maintaining-a-premises enhancement, the PSR stated that Rico obtained methamphetamine from his source of supply and transported it to be stored and maintained at his mother's home, where he resided "on and off" during the conspiracy.  Furthermore, the PSR stated that

---

[2] To the extent that Rico reurges his legal claim that the mere distribution of imported methamphetamine is insufficient to warrant the adjustment, that claim, as he admits, is foreclosed.  Under our case law, U.S.S.G. § 2D1.1(b)(5) has no scienter requirement; thus, the fact that the methamphetamine was imported—regardless of whether he was aware of the importation—is adequate for the adjustment to apply.  *See United States v. Foulks,* 747 F.3d 914, 915 (5th Cir. 2014) (per curiam); *Serfass*, 684 F.3d at 553–54.

Rico left methamphetamine with his brother to deliver to a co-defendant, David Godinez.   Rico's brother delivered methamphetamine to Godinez from his mother's home on several occasions at the direction of Rico.   Moreover, "coconspirators confirmed that the defendant stored methamphetamine at his mother's residence . . . .   Godinez retrieved methamphetamine, on at least one occasion, from the defendant's mother's residence."

In his objections to the PSR, Rico challenged the maintaining-a-premises enhancement.   In responding to the objections, the Government clarified that Godinez was the primary source of information against Rico, and that Godinez stated that Rico stored and sold methamphetamine from his mother's home. In the addendum to the PSR, the probation officer stated that he clarified the information with one of the agents on the case as well as with debriefings of coconspirators and codefendants.   The addendum specified that "[o]n more than one occasion, the defendant instructed his brother, who resided at their mother's home, to provide quantities of methamphetamine to Godinez at their mother's home."

When sentencing a defendant, "the court may consider relevant information without regard to its admissibility under the rules of evidence applicable at trial, *provided that the information has sufficient indicia of reliability to support its probable accuracy*."   U.S.S.G. § 6A1.3(a) (emphasis added).  We have clarified that "[w]hile a PSR generally bears sufficient indicia of reliability, '[b]ald, conclusionary statements do not acquire the patina of reliability by mere inclusion in the PSR.'" *United States v. Narviz-Guerra*, 148 F.3d 530, 537 (5th Cir. 1998) (second alteration in original) (citation omitted) (quoting *United States v. Elwood*, 999 F.2d 814, 817–18 (5th Cir. 1993)).   The applicable "reasonably reliable" standard, however, is "not intended to be onerous." *United States v. Malone*, 828 F.3d 331, 337 (5th Cir.), *cert. denied sub nom. Green v. United States*, 137 S. Ct. 526 (2016).

No. 16-10235

Rico argues that, by not attributing the statements contained in the PSR to a particular source, the statements are bald assertions that are insufficiently reliable. *See, e.g.*, *United States v. Rome*, 207 F.3d 251, 254 (5th Cir. 2000) (per curiam) (determining that "the statement that the defendant and his accomplice would have stolen all the guns if they had not been interrupted" was a bald assertion); *United States v. Williams*, 22 F.3d 580, 581 n.3 (5th Cir. 1994) (determining that law enforcement's statement that the defendant was "the muscle" behind the conspiracy was a bald assertion). He likens this case to *Narviz-Guerra*, in which the defendant challenged the reliability of statements made in the PSR relating to drug quantity. 148 F.3d at 537. The PSR in *Narviz-Guerra* stated that the total amount was "based primarily on information contained in various debriefings, recorded meetings and telephone calls, and on the amount of marijuana seized in the different arrests of the co-conspirators" and that the defendant was only being held accountable for "those amounts of drugs that have been substantiated." *Id.* We noted that there was no way to determine if the information was reliable because none of the enumerated sources for the information was attached to the PSR nor was there an explanation of how the information in the PSR was corroborated. *Id.*

*Narviz-Guerra* does not control the outcome here. Although the PSR and PSR addendum in this case contain a general laundry list of sources for the information contained therein, the PSR specifically attributes the information about storing drugs at the mother's house to "coconspirators." Moreover, not only did the Government clarify in its response to Rico's objections that the specific source for the information was Godinez, but also Rico acknowledged that Godinez was the source of this information at the sentencing hearing, stating that there was "an allegation from the codefendant Godinez in this case that Mr. Rico was using his mother's house to store methamphetamines."

6

No. 16-10235

Indeed, although the PSR itself does not specifically identify Godinez as the source for the maintaining-a-premises enhancement, it is apparent from the PSR and its addendum that Godinez provided the investigating officers with information about Rico's involvement in the drug conspiracy as a general matter. Statements by coconspirators are sufficiently reliable to form the basis of a finding. *See United States v. Zuniga*, 720 F.3d 587, 591 (5th Cir. 2013) (per curiam); *United States v. Cantu-Ramirez*, 669 F.3d 619, 629 (5th Cir. 2012).

Additionally, upon receipt of Rico's objections to the PSR, the probation officer clarified the information in the PSR with an agent on the case. As to this point, we have noted that information based on the results of a police investigation is sufficiently reliable. *See United States v. Fuentes*, 775 F.3d 213, 220 (5th Cir. 2014) (per curiam); *United States v. Vela*, 927 F.2d 197, 201 (5th Cir. 1991); *see also United States v. Godinez*, 640 F. App'x 385, 389 (5th Cir.)[3] (per curiam) ("In light of the [probation officer]'s interview with the case agent wherein the agent clarified and corroborated the information found in the investigative material relied upon to compile the PSR, we hold that the information contained therein, including the description of the [unidentified confidential informant]'s involvement . . . , is 'reasonably reliable.'"), *cert. denied*, 137 S. Ct. 104 (2016). On these facts, the information was sufficiently reliable to support the maintaining-a-premises finding.

C.

In his final issue on appeal, Rico maintains that the district court erred by not granting him a three-point reduction for acceptance of responsibility

---

[3] Although *Godinez* is not "controlling precedent," it "may be [cited as] persuasive authority." *Ballard v. Burton*, 444 F.3d 391, 401 n.7 (5th Cir. 2006) (citing 5TH CIR. R. 47.5.4).

7

under U.S.S.G. § 3E1.1.  Because any error in denying the reduction is harmless, we affirm.

An error in calculating a defendant's guidelines range will be harmless and not require reversal if the district court considered the correct guidelines range and indicated that it would impose the identical sentence if that range applied.  *United States v. Richardson*, 676 F.3d 491, 511 (5th Cir. 2012); *United States v. Duhon*, 541 F.3d 391, 396 (5th Cir. 2008); *United States v. Bonilla*, 524 F.3d 647, 656 (5th Cir. 2008)).[4]  The record establishes that the district court was aware of, and considered, the guidelines range that would apply if Rico received a reduction under § 3E1.1.  At the sentencing hearing, the Government notified the court of the sentencing range with the reduction and without the reduction.  In announcing the sentence, the district court stated, "I've concluded that a sentence of 400 months of imprisonment would be an appropriate sentence in this case, and *that would be without regard to whether there was acceptance of responsibility*."  (emphasis added).  The court went on to state "[i]n other words, that really is kind of a moot issue because *that's the sentence I would have imposed, even if the range was 360 to 480 months*."  (emphasis added).  Because the district court considered the purportedly correct Guidelines range and made it clear that the sentence would be the same regardless of whether that range applied, any error was harmless.  *See Duhon*, 541 F.3d at 396 (5th Cir. 2008) ("[I]n *Bonilla*, we concluded that a non-Guideline sentence does not result from the district court's miscalculation of the Guideline range if the district court: (1) contemplated the correct Guideline

---

[4] *United States v. Ibarra-Luna*, 628 F.3d 712, 714 (5th Cir. 2010), does not mandate a different result.  The circumstances of that case involved a district court that did not consider the correct guidelines range, only the incorrect one.  In such cases, in order to establish harmless error, the Government must show that the district court would have imposed the same sentence for the same reason.  *Richardson*, 676 F.3d at 511 (contrasting the requirements of *Bonilla* and *Duhon* with those of *Ibarra-Luna*).

range in its analysis and (2) stated that it would have imposed the same sentence even if that range applied." (citing *Bonilla*, 524 F.3d at 656)).

AFFIRMED.