# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

No. 17-31006

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

ERNESTO MORENO,

Defendant-Appellant.

United States Court of Appeals
Fifth Circuit

**FILED**

January 16, 2019

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:15-CR-76-7

Before JONES, HAYNES, and OLDHAM, Circuit Judges.

PER CURIAM:*

On the eve of trial, Ernesto Moreno pleaded guilty to knowingly conspiring to distribute more than 500 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846. This drug-trafficking crime triggers a mandatory minimum sentence of 120 months and a maximum of life. *See* 21 U.S.C. § 841(b)(1)(A)(viii). The district court sentenced Moreno to 372

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 17-31006

months.   Moreno argues the district court misapplied the Guidelines.   We affirm.

I.

A grand jury indicted Moreno for knowingly conspiring to distribute (and possess with intent to distribute) 500 or more grams of methamphetamine. The district court set the case for trial.   On the scheduled first day of trial, however, Moreno pleaded guilty.   He did so without a plea agreement.

Moreno signed a nine-page factual basis to support his plea.   In it, Moreno admitted participating in a drug-trafficking conspiracy from 2011 to 2015.   He further admitted he was a "leader" of the conspiracy.   He admitted conspiring with family members and others to distribute drugs from California to Louisiana, Texas, and Tennessee.   At times, Moreno shipped the drugs himself.   Other times, he directed one of his co-conspirators to ship the drugs. The factual basis did not, however, identify the quantity of drugs Moreno trafficked.

The final presentence report ("PSR") did. The PSR described a series of narcotics seizures and undercover purchases on various dates and in various places.   It specified the types and weights of the various drugs attributable to Moreno.   The PSR concluded the "conspiracy involved the trafficking of at least 17.95941 kilograms of methamphetamine, 3.34 kilograms of cocaine hydrochloride, 17.38 grams of marijuana, and 5.10 grams of alprazolam."

Based on those drug quantities, the PSR assigned a base offense level of 36.  *See* U.S.S.G. § 2D1.1(c)(2).  The PSR applied a four-level enhancement for Moreno's leadership role and recommended a two-level reduction for acceptance of responsibility.  That yielded a total recommended offense level of 38.

No. 17-31006

At the sentencing hearing, the district court started with the PSR. It accepted the PSR's estimate of the drug quantities attributable to Moreno. Moreno did not object.

Then the district court considered whether Moreno was a "leader" of his family's drug-trafficking organization. Moreno admitted as much in the factual basis for his plea. But the initial PSR had failed to recommend a four-level leadership enhancement under U.S.S.G. § 3B1.1(a). The Government objected. The probation officer reconsidered and revised the final PSR to recommend the four-level leadership enhancement. That obviously mooted the Government's objection to the initial PSR. But it also confused the record of who objected to what:

> [THE COURT:] [T]he probation officer's response [to the Government's objection] indicates that the role assessment in the offense level computation sections for the final PSR have been amended to reflect a four-level enhancement pursuant to guidelines, Section 3B1.1(a). Thus, [the Government's] objection would also be moot. Is that correct?
>
> [AUSA]: Correct.
>
> THE COURT: And, likewise, any objection from the defendant.
>
> [MORENO'S ATTORNEY]: Yes.

It is unclear whether Moreno's attorney was saying "Yes, I agree any objection is moot," or "Yes, I object." In all events, Moreno's attorney said nothing else. And the district court acted as if no objection was made. It imposed the four-level leadership enhancement.

The district court next considered whether Moreno was entitled to a reduction for acceptance of responsibility. The Guideline on acceptance of responsibility has two subsections. *See* U.S.S.G. § 3E1.1(a)–(b). The PSR recommended a two-level reduction under subsection (a) because the probation officer believed Moreno "clearly demonstrate[d] acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). Subsection (b) allows the Government to

3

No. 17-31006

request an additional one-level reduction where the defendant "timely" accepts responsibility, "thereby permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently."  U.S.S.G. § 3E1.1(b).  The Government did not request the subsection (b) reduction because it "had fully prepared for . . . trial and expended countless hours and significant government resources," including flying two state witnesses to the trial location, prior to Moreno's "change of heart."  The district court accepted the Government's explanation under subsection (b).  The district court also concluded the same rationale precluded a two-level reduction under subsection (a).  Moreno did not object.  Accordingly, he received no reduction under either subsection of § 3E1.1.

Finally, the district court received evidence on whether Moreno possessed a firearm during his drug deals.  A witness testified that he saw Moreno pull out a firearm and place it on a table while delivering drugs.  The Government also presented evidence that Moreno posted pictures of drugs and firearms on a social media page.  After considering this evidence, the district court concluded by a preponderance of the evidence that Moreno possessed a firearm during drug-trafficking activity.  It therefore applied a two-level firearm enhancement under U.S.S.G. § 2D1.1(b)(1).

That brought Moreno's offense level to 42.  That's 36 (base offense) plus 4 (leadership role) plus 2 (firearm).  Moreno's criminal history placed him in category III.  That yielded a guideline range of 360 months to life.  The district court sentenced Moreno to 372 months in prison.  Moreno timely appealed.

II.

Moreno raises four claims on appeal.  He argues the district court erroneously found (A) the quantity of Moreno's drugs, (B) Moreno was a "leader" of the drug-trafficking organization, (C) Moreno possessed a firearm,

4

No. 17-31006

and (D) Moreno did not timely accept responsibility.  Some of these claims are preserved.  Others are not.  All are meritless.

A.

We start with drug quantity.  The PSR attributed to Moreno 14.68 kilograms of methamphetamine recovered from a stash house in El Centro, California.  Moreno argues those drugs should be excluded from his sentence.  Doing so would reduce his base offense level from 36 to 32.

Moreno affirmatively waived his right to appeal this issue.  When a defendant "intentionally relinquishe[s] or abandon[s] a known right, the issue is waived." *United States v. Rico*, 864 F.3d 381, 383 (5th Cir. 2017).  And when a defendant waives an objection, it is "entirely unreviewable" and "we cannot address it." *Id.* (citation omitted).  In Moreno's sentencing memorandum, he argued the applicable base level was 30 and sought to "preserv[e] his right to argue" that not all of the drugs should be attributed to him.  But at the sentencing hearing, Moreno *twice* told the district court he had no objection to a sentence based on the drug amounts included in the PSR.  This shows that Moreno "consciously decided to forgo that objection at sentencing." *Id.* Accordingly, this issue is entirely unreviewable. *See id.*; *United States v. Cupit*, 670 F. App'x 273, 273 (5th Cir. 2016) (per curiam).

B.

Next, we turn to Moreno's leadership enhancement.  Moreno argues he was merely a drug supplier, not a drug-trafficking leader.  He also attacks the reliability of the Government's evidence.

As an initial matter, the standard of review is unclear.  If Moreno properly preserved the issue, "[a] trial court's finding that a defendant is a leader or organizer is a factual finding reviewed for clear error." *United States v. Haines*, 803 F.3d 713, 744 (5th Cir. 2015).  But where the defendant fails to preserve a claim, we are "strictly circumscribed" to plain-error review. *Puckett*

*v. United States*, 556 U.S. 129, 134–35 (2009).  That is because the defendant's failure to object at sentencing deprives the district court of the "opportunity to clarify its reasoning or correct any potential errors in its understanding of the law at sentencing."  *United States v. Hernandez-Martinez*, 485 F.3d 270, 272 (5th Cir. 2007).  Plain-error review likewise applies to "objections that are too vague [to] . . . alert the court to the legal argument [the party] now presents."  *United States v. Dominguez-Alvarado*, 695 F.3d 324, 327–28 (5th Cir. 2012) (quotation omitted).  Here, the district court confirmed the Government's objection to the initial PSR was mooted by the probation officer's decision to include a leadership enhancement.  Then the district court said, in a declarative sentence, "And, likewise, any objection from the defendant."  To which Moreno's attorney replied "Yes."

We think plain error applies.  That's for two reasons.  First, it appears that Moreno's attorney was simply agreeing the Government's previous objection had been mooted in the final PSR.  Second, in any event, an unadorned one-word "yes" is insufficient to alert the district court to the basis for the objection.  In either event, plain error would apply.  *See id.*

But Moreno's claim would fail under either standard of review.  The aggravating-role "sentencing enhancement is applicable if the defendant is *a* leader and not *the* leader."  *United States v. Olguin*, 643 F.3d 384, 402 (5th Cir. 2011).  Several factors are relevant in assessing whether the defendant is one of the leaders of a conspiracy:

> [1] the exercise of decision making authority, [2] the nature of participation in the commission of the offense, [3] the recruitment of accomplices, [4] the claimed right to a larger share of the fruits of the crime, [5] the degree of participation in planning or organizing the offense, [6] the nature and scope of the illegal activity, and [7] the degree of control and authority exercised over others.

U.S.S.G. § 3B1.1, cmt. n. 4.  Being "a buyer and seller of illegal drugs" alone is

not enough to show a defendant is a leader. *United States v. Betancourt*, 422 F.3d 240, 245 (5th Cir. 2005). But "[a] person's status as a distributor in a drug conspiracy is relevant in determining both the degree of participation in planning or organizing the offense and the nature and scope of the illegal activity." *Haines*, 803 F.3d at 744 (quotation omitted).

In this case, several factors support the district court's imposition of the aggravating-role enhancement. Moreno admitted he was a "leader" of the drug-trafficking organization. A Government witness also testified to that effect. Furthermore, the PSR detailed an instance where Moreno instructed a co-conspirator to "find a safe location to store the narcotics and await further instructions." *See United States v. Akins*, 746 F.3d 590, 610 (5th Cir. 2014) (concluding the district court did not err in applying an aggravating-role sentencing enhancement when the defendant provided instructions "on what to do with the drugs"). The PSR also detailed Moreno's responsibilities for the drug-trafficking organization's financial affairs, including directing deposits of funds and planning a potential expansion to Nashville. *See United States v. Benavidez*, 360 F. App'x 525, 527 (5th Cir. 2010) (per curiam) (explaining "[s]omeone with major responsibilities on the financial side of a criminal enterprise" qualifies for "the leadership enhancement under Section 3B1.1(a)"). And at least on one occasion, Moreno "fronted" some drugs to a co-conspirator so he could make enough money to repay Moreno a previous debt. *See United States v. Wilson*, 622 F. App'x 393, 402–03 (5th Cir. 2015) (per curiam) (considering a defendant's fronting of drugs to be evidence of control). Based on this evidence, it was not clear error, much less plain error, for the district court to impose the four-level sentencing enhancement.

Moreno argues this evidence was too unreliable or conclusory for the district court to rely on it. We disagree. The PSR did not merely conclude Moreno was a leader; it provided detailed examples of how Moreno organized

the conspiracy and exercised control over co-conspirators. And "[f]indings of fact included in a 'PSR are considered reliable and may be adopted without further inquiry if the defendant fails to present competent rebuttal evidence.'" *United States v. Tisdale*, 264 F. App'x 403, 409 (5th Cir. 2008) (quoting *United States v. Parker*, 133 F.3d 322, 329 (5th Cir. 1998)). Moreno did not do so.

## C.

We turn now to Moreno's gun possession. Under the Guidelines, "the defendant's sentence should be increased by two levels whenever, in a crime involving the manufacture, import, export, trafficking, or possession of drugs, the defendant possessed a dangerous weapon." *United States v. Cooper*, 274 F.3d 230, 245 (5th Cir. 2001) (citing U.S.S.G. § 2D1.1(b)(1)). This two-level enhancement should be applied if the Government shows "by a preponderance of the evidence that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant." *Id.* (quotation omitted). Moreno preserved this claim of error, so our review is for clear error.

There is none. A witness testified he saw Moreno take out a gun while Moreno was delivering drugs. Moreno contends that testimony was unreliable, in part because the witness was a drug addict. But "[c]redibility determinations in sentencing hearings are peculiarly within the province of the trier-of-fact." *United States v. Sotelo*, 97 F.3d 782, 799 (5th Cir. 1996) (quotation omitted). And the district court did not clearly err by crediting the witness's testimony despite his drug use. *Cf. United States v. Armendariz*, 663 F. App'x 350, 352–53 (5th Cir. 2016) (affirming judgment of district court when it was based, in part, on an admission made by a defendant who used heroin). Furthermore, separate photographs posted on social media of Moreno, drugs, money, and guns corroborated Moreno's use of a firearm in connection with his drug transactions. Because it is more than plausible Moreno used a gun while distributing methamphetamine, the district court did not clearly err by

applying the firearm enhancement.  *See Cooper*, 274 F.3d at 238 ("A factual finding is not clearly erroneous if it is plausible in light of the record read as a whole.").

### D.

Finally, Moreno argues the district court clearly erred by declining to award a two-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(a).  Again, we disagree.

As a threshold matter, our standard of review is something tougher than clear error.  That's for two reasons.  First, "[t]his Court will affirm a sentencing court's decision not to award a reduction [under § 3E1.1(a)] unless it is without foundation, a standard of review more deferential than the clearly erroneous standard."  *United States v. Hott*, 866 F.3d 618, 620 (5th Cir. 2017) (alteration omitted) (quotation omitted).  Second, plain-error review applies whenever a defendant forfeits his objection—as Moreno did here.  *See Puckett*, 556 U.S. at 134.  When the district court *sua sponte* declined to apply the two-level reduction, Moreno did not object.  Nor did he object later in the sentencing hearing when the district court gave the parties a final opportunity to present arguments or objections to the Guidelines calculations.

Under either standard—"without foundation" or plain error—Moreno's claim fails.  "This court has routinely upheld the denial of a reduction for acceptance of responsibility when a defendant waits until the eve of trial to enter a guilty plea."  *United States v. Taylor*, 331 F. App'x 287, 288 (5th Cir. 2009) (per curiam) (collecting cases).  That is what happened here.  And that is more than enough to warrant rejecting Moreno's claim.

Moreno's only counterargument is out-of-circuit precedent suggesting a late guilty plea alone is insufficient to deny a reduction under § 3E1.1.  *See United States v. Hollis*, 823 F.3d 1045, 1049 (6th Cir. 2016) (per curiam); *United States v. Kumar*, 617 F.3d 612, 637 (2d Cir. 2010).  It is not obvious that

either case stands for that proposition. *See Hollis*, 823 F.3d at 1049 (acknowledging a guilty plea "on the eve of or during trial" might indicate a defendant is not truly accepting responsibility); *Kumar*, 617 F.3d at 637 (acknowledging that "under certain circumstances the lateness of a plea might indeed weigh against the defendant"). Moreover, even assuming (without deciding) a court may not deny a § 3E1.1(a) reduction solely due to a late guilty plea, other reasons support the denial here. *See United States v. Diaz*, 39 F.3d 568, 571 (5th Cir. 1994) (explaining that if a valid reason supports the district court's ruling, it can be affirmed). The most obvious reason is Moreno "blame[d] others"—namely, his family—"for his criminal activity" during his statement at sentencing. *See United States v. Wilder*, 15 F.3d 1292, 1299 (5th Cir. 1994) (concluding a defendant did not show "sincere contrition" when he blamed others and downplayed his own participation in the offense). Moreno therefore "[has] not show[n] plain error and, in any event, the district court had foundation to deny the reduction." *Hott*, 866 F.3d at 620.

AFFIRMED.