# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-10493

United States Court of Appeals
Fifth Circuit

**FILED**

October 27, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

> Plaintiff - Appellee

v.

RAMONA C. JOHNSON; NEKIA N. EVERSON,

> Defendants - Appellants

Appeals from the United States District Court
for the Northern District of Texas

Before JOLLY, BARKSDALE and SOUTHWICK, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Ramona Johnson and Nekia Everson were charged with conspiracy to prepare false and fraudulent income tax returns in violation of 18 U.S.C. § 371. They challenge their sentences and the district court's calculation of tax loss according to §§ 2T1.1(a) and 2T4.1 of the United States Sentencing Guidelines. For the reasons set forth below, we AFFIRM.

## I.

Johnson, a self-taught tax preparer and member of the National Association of Tax Professionals and the National Society of Accountants, operated a tax preparation business located in Fort Worth, Texas, with her daughter-in-law Everson. During the tax seasons of 2008 through 2014,

No. 15-10493

Johnson and Everson engaged in the preparation of fraudulent tax returns for their customers. After an IRS investigation, the Government brought an indictment against them, charging them with multiple counts of falsely preparing and filing tax returns and assisting in the filing of fraudulent returns. The indictment alleged that Johnson and Everson falsified Schedule C forms by reporting inaccurate income and loss amounts from the taxpayers' purported personal businesses; falsified Schedule A forms by reporting incorrect itemized deductions; and falsely included on taxpayers' returns the personal information of individuals who had no connection with the taxpayer as dependents in order to enable the taxpayer to receive an Earned Income Tax Credit. Following the indictment, Johnson and Everson approached the Government to discuss a waiver of a jury trial. The Government agreed to reduce the overall number of counts of conviction that it would pursue if the defendants opted for a bench trial.

Thereafter the Government filed a notice of intent to waive a jury trial. In doing so, the Government explained that Johnson and Everson had instigated the request to waive a jury trial and elaborated that a bench trial would be more efficient. The district court, however, expressed concern with the arrangement, noting

> that sounds like to me what you're saying is that you're coercing the defendants into foregoing a jury trial by telling them that if you don't forego the jury trial, . . . we're going to try you for more offenses, . . . but if you do agree to waive a jury trial, then we won't try you. That seems to me to be inappropriate coercion. I've never had that situation develop before, but I have some question about the propriety of that.

In the wake of these voiced concerns, the district court denied the waiver of a jury trial. The Government responded that it had already informed the defendants that it would seek a third superseding indictment. The new

2

indictment added five substantive counts against Everson and deleted three substantive counts against Johnson.

Johnson then filed a motion to waive a jury trial. She explained to the district court her desire to pursue this avenue because of the greater efficiency of a bench trial and because she trusted more the determination of a judge than that of a jury. Everson echoed Johnson's sentiments. Concluding that the request was knowing and voluntary, the district court granted the waiver.

A bench trial followed. Johnson was found guilty of conspiring to aid and assist in the preparation and presentation of a false tax return (count 1); aiding in the preparation of a false tax return in violation of 26 U.S.C. § 7206(2) (counts 2-9, 11-16, 18, 20-27, and 29-31); and filing a false return in violation of 26 U.S.C. § 7206(1) (counts 35-36). Everson was found guilty of conspiracy and in the aiding and assisting in the preparation of false tax returns (count 1 and counts 17, 19, and 32-34, respectively).

At sentencing, Johnson received a total offense level of 38, and Everson received an offense level of 32. This determination was based in part on the Government's calculation of tax loss in the amount of $25,201,861. The district court sentenced Johnson to 170 months of imprisonment and Everson to 95 months of imprisonment. It also ordered Johnson and Everson to pay restitution to the IRS in the amount of $14,782,524.

Johnson and Everson timely appealed and assert the following challenges: first, they allege error on the part of the district court in denying their first request for waiver of a jury trial, and second, they claim that the district court clearly erred in calculating the tax loss amount. In addition, for the first time on appeal, Johnson and Everson challenge the amount of time allotted to them for the purpose of examining the tax returns that were not included in the sample of returns used to generate the tax loss calculation.

No. 15-10493

II.

A.

Johnson and Everson first claim that the district court erred in refusing to grant the Government's initial motion for waiver of a jury trial. They argue that the district court improperly determined their initial motion to be the result of coercion on the part of the Government. Johnson and Everson further contend that although the court ultimately granted a non-jury trial, they were prejudiced by the initial denial because the third superseding indictment increased the total counts of conviction.

We adopt the abuse of discretion standard in our examination of the district court's denial of a written waiver of a jury trial that has been approved by both the defendants and the Government. *See United States v. Stark*, 582 F. App'x 462, 463 (5th Cir. 2014) (citing *Singer v. United States*, 380 U.S. 24, 34 (1965)) (applying abuse of discretion standard to a case in which the Government did not consent to a jury waiver and the district court denied the waiver). Under this standard, the district court "abuses its discretion if it bases its decision on an error of law or a clearly erroneous assessment of the evidence." *United States v. Gray*, 717 F.3d 450, 451 (5th Cir. 2013) (quoting *United States v. McKnight*, 570 F.3d 641, 645 (5th Cir. 2009)).

B.

Rule 23(a) of the Federal Rules of Criminal Procedure provides that "[i]f the defendant is entitled to a jury trial, the trial must be by jury unless: (1) the defendant waives a jury trial in writing; (2) the government consents; and (3) the court approves." FED. R. CRIM. P. 23(a). A district court is afforded discretion under the court-approval prong of Rule 23(a), but the discretion must be "sound and advised." *Patton v. United States*, 281 U.S. 276, 312 (1930) (observing that because trial by jury is "the preferable mode of disposing of issues of fact in criminal cases," a district court's decision to grant a waiver of

4

No. 15-10493

a jury trial must be supported by "sound and advised discretion"), *abrogated on other grounds by Williams v. Florida*, 399 U.S. 78 (1970).

Further, there is no constitutional right to a non-jury trial. Indeed, the Supreme Court found in *Singer* that no "constitutional impediment" exists to placing conditions on a court's granting a jury trial waiver when "the result [of a denial of the waiver] is simply that the defendant is subject to an impartial trial by jury—the very thing that the Constitution guarantees him." *Singer*, 380 U.S. at 36. We presume that the defendant "understandingly and intelligently waived [her] right to jury trial" when she does not claim prejudice. *United States v. Igbinosun*, 528 F.3d 387, 390 (5th Cir. 2008) (quoting *United States v. Tobias*, 662 F.2d 381, 387 (5th Cir. 1981)).

In both instances, because Johnson and Everson did not assert a claim of prejudice before the district court, we understand that their requests for waiver of a jury trial were intelligently made. Johnson and Everson nevertheless contend that they would have benefited from a waiver of a jury trial upon the initial motion because the trial would have then proceeded on fewer counts and the defendants' ultimate prison sentences likely would have been reduced. Given the constitutional preference for a trial by jury and the broad discretion that is afforded a sentencing judge, however, we are unconvinced that the district court's comments regarding the propriety of allowing a non-jury trial and its use of the term "coercion" constitute an error of law, or otherwise an abuse of discretion. Thus the convictions of the defendants are affirmed.

### III.

### A.

With respect to sentencing, Johnson and Everson contend that the district court miscalculated the amount of tax loss, which affected the lengths of their sentences. Further, they argue that they were not given sufficient time

No. 15-10493

to examine all of the allegedly false tax returns so as to challenge the sample on which the probation officer relied in calculating the tax loss. Johnson and Everson raise the latter argument for the first time on appeal.

This court reviews a district court's calculation of tax loss for clear error. *United States v. Clark*, 139 F.3d 485, 490 (5th Cir. 1998). Objections that are raised for the first time on appeal are reviewed for plain error. *United States v. Hernandez-Martinez*, 485 F.3d 270, 272 (5th Cir. 2007). Under plain error review, the error or defect must be "clear or obvious," must affect the "appellant's substantial rights," and must "seriously affect the fairness, integrity, or public reputation of the judicial proceedings." *Puckett v. United States*, 556 U.S. 129, 135 (2009) (quoting *United States v. Olano*, 507 U.S. 725, 736 (1993)). In the event that all of these requirements are satisfied, the reviewing court has discretion to remedy the plain error. *Id.*

1.

Under the Sentencing Guidelines, the base offense level for a tax fraud offense derives from the amount of loss that is the object of the offense. U.S.S.G. § 2T1.1(a) and § 2T4.1. The commentary to § 2T1.1 states that when the tax loss is "uncertain," the court may "simply make a reasonable estimate based on the available facts." U.S.S.G. § 2T1.1 n.1. To prevail on an argument that the district court's calculation of tax loss was clearly erroneous, a defendant must introduce evidence to contradict or rebut the alleged improper computation of the loss. *See Clark*, 139 F.3d at 490.

2.

The Government calculated its estimate of the tax loss amount in the following manner. According to IRS case agent testimony, Johnson's company filed 13,429 returns during the years 2006 to 2013. Of those, 6,727 returns contained Schedule C losses that generated a total claimed refund amount of approximately $37.5 million. The IRS case agent then researched tax returns

filed in the Dallas/Fort Worth ("DFW") area during the 2006-2013 time frame and determined that 7.1% contained Schedule C losses. This 7.1% was then applied to $37 million to yield $2.6 million; the case agent concluded that $2.6 million (i.e., 7.1%) of the total claimed refund amount was not fraudulent because this amount was on par with the other returns filed in the DFW area.

Next, the case agent employed the extrapolation method[1] of estimating tax loss by selecting a sample of tax returns prepared during the 2006 to 2013 tax seasons to analyze the percentage of the claimed refund amount that was deemed to be fraudulent in this group. The sample was defined as follows. Throughout the investigation, 58 Revenue Agent Reports ("RARs") were prepared. Of those, 41 investigated returns reflected Schedule C losses; this amount included not only returns that were part of the indictment as counts of conviction, but also returns from the RARs that did not factor into the counts of conviction. The case agent calculated the total criminal tax loss of the 41 returns to be approximately $235,000. This amount constituted 72.2% of the total refund amount claimed, which was approximately $325,000.

Recall the $2.6 million figure which equaled to 7.1% of the total refund amount of $37.5 million claimed from returns with Schedule C losses. The case agent subtracted $2.6 million from $37.5 million to find a difference of $34.9 million. This amount was determined to be the total amount of refunds claimed on Schedule C losses less the DFW area credit. The case agent then applied the 72.2% falsity rate to $34.9 million to reach an estimated total loss amount—resulting from fraudulent Schedule Cs—to be $25,201,861.

---

[1] Extrapolation is often used in tax audit situations when the number of tax returns under review is too large for a practicable and effective analysis. *Black's Law Dictionary* defines "extrapolation" as "[t]he process of estimating an unknown value or quantity on the basis of the known range of variables." *Extrapolation*, BLACK'S LAW DICTIONARY (9th ed. 2009). For a description of the use of extrapolation to calculate fraudulent tax loss, see *United States v. Mehta*, 594 F.3d 277, 283 (4th Cir. 2010).

No. 15-10493

3.

Johnson and Everson objected to the Presentence Investigation Report ("PSR") recommending the aforementioned calculation of losses and raise the same objection on appeal. They contend that the sample used to extrapolate the amount of tax loss was too small and not representative of the total corpus of tax returns prepared. The use of this sample, according to Johnson and Everson, resulted in an inflated percentage of fraud.

The Government counters that the IRS case agent's method of calculation was similar to that utilized previously in *United States v. Simmons*, 420 F. App'x 414 (5th Cir. 2011). In *Simmons*, an unpublished decision, the IRS examined a sample of 41 tax returns to estimate the tax loss—a number that is identical to the number of returns composing the extrapolated sample in the instant case. Although the sample in *Simmons* was "not . . . completely random," no evidence in the record "indicate[d] [whether] those returns would have a higher falsity rate than any other returns prepared by Simmons." *Id.* at 418.

Johnson and Everson argue that the instant case is distinguishable from *Simmons*. Here, the 41 tax returns were chosen from the prepared RARs. The defendants claim that, as such, they had already been audited and were therefore less random than the selection at issue in *Simmons*. The defendants point out too that nearly half of the returns were bases for the counts of conviction. In addition, Johnson and Everson introduced evidence before the district court indicating that their investigators had located 82 customers whose returns were not included in the sample; none of these clients expressed any problems with their tax returns. These factors, according to Johnson and Everson, contributed to an inflated falsity rate. The defendants also point to other circuits' decisions to support their argument, namely the Fourth Circuit's opinion in *United States v. Mehta,* 594 F.3d 277, 283 (4th Cir. 2010). The court

8

No. 15-10493

held in *Mehta* that the use of only audit-flagged returns to calculate total tax loss was an error on the part of the district court, but that the error was harmless under the harmless error standard of review.  Johnson and Everson argue that *Mehta*'s persuasive authority with respect to the improper use of audit-flagged returns supports a reversal of the instant tax loss calculation.

4.

We view Johnson and Everson's arguments as reasonable and relevant, but we do not find them sufficient to warrant a reversal of the district court's adoption of the tax loss calculation.  Although the defendants point to errors in the Government's calculation, they do not offer evidence or alternative calculations to contradict or rebut a finding that the alleged tax loss was anything but a "reasonable estimate based on the available facts."  Further, we have affirmed tax loss calculations based on less reliable information than that present in the instant case.  *See, e.g.*, *United States v. Montgomery*, 747 F.3d 303, 311–12 (5th Cir. 2014) (upholding IRS case agent's calculation of tax loss notwithstanding agent's failure to account for defendants' unclaimed business expenses).  Thus, even if the sample might have been more randomly selected to generate a more specific portrayal of the tax fraud at issue, the district court did not commit clear error in adopting the case agent's calculations.

B.

Johnson and Everson's argument that they were not allowed sufficient time to inspect the non-sample tax returns was raised for the first time on appeal and thus warrants plain error review.

The defendants were given the time between the PSR's articulation of the calculation method on March 16, 2015 and the date of sentencing on May 13, 2015 to prepare their defense to the tax loss calculation.  This time frame resulted from the court's grant of a continuance to the defendants; after the May 13th sentencing date was set, Johnson and Everson did not move for a

second continuance. The defendants nonetheless now attempt to compare their allotted time to the five months of preparation obtained by the defendant in *Simmons*. They claim further that with more time they would have been able to locate favorable witnesses in excess of the 82 customers they contacted as part of their defense.

This argument fails under plain error review. Johnson and Everson have not shown that they were unable to prepare a proper defense as a result of insufficient time. Neither do they show that the two-month time frame affected their substantial rights or seriously hindered the fairness of the judicial proceedings. Indeed, it was Johnson and Everson's own failure to request a second continuance that contributed to the length of the time frame at issue. Thus, we find no plain error on the part of the district court.

## IV.

In sum, the district court did not abuse its discretion in refusing to grant the first waiver of a jury trial. Further, the district court did not clearly err in adopting the PSR's calculation method in estimating the amount of tax loss generated by Johnson and Everson's fraudulent activity. Moreover, the time frame allotted to the defendants to prepare their defense did not constitute plain error. Thus, we AFFIRM the judgment of the district court.