# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

February 6, 2023

Lyle W. Cayce
Clerk

No. 22-30083

United States of America,

*Plaintiff—Appellee*,

*versus*

Deborah Cooksey,

*Defendant—Appellant*.

Appeal from the United States District Court
for the Western District of Louisiana
USDC No. 5:21-CR-57-1

Before Graves, Ho, and Duncan, *Circuit Judges*.

Per Curiam:*

Defendant Deborah Cooksey entered into a plea agreement after investigators discovered her filing of false tax returns. In this appeal, she challenges her sentence and restitution, arguing that the tax loss calculation upon which they were based was improper. Because we find that the district court did not err in establishing the basis of this calculation, we affirm.

---

* This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 22-30083

## I.

Defendant, the owner and operator of a tax preparation business, prepared and filed her personal federal income tax returns in 2013 and 2014. Despite written declarations that these filings were made under the penalty of perjury, she underreported her tax liabilities for both years. Defendant was indicted on March 24, 2021, for two counts of making and subscribing a false tax return. She filed forms amending her 2013 and 2014 returns on June 15, 2021, and September 15, 2021, respectively. She pleaded guilty to the count regarding the 2013 return on September 17, 2021, pursuant to a written plea agreement. She agreed to pay the Internal Revenue Service (IRS) restitution for the taxes owed from both 2013 and 2014 at an "amount to be decided before or at sentencing."

The initial presentence report (PSR), filed on November 16, 2021, acknowledged that the amounts owed "for both years are in dispute." It calculated the total tax loss for purposes of establishing the base offense level by subtracting the gross receipt values reported in Defendant's original returns from the actual gross receipts determined by IRS investigators and applying the federal marginal income tax rate of 28%, as recommended by U.S.S.G. § 2T1.1(c)(1)—resulting in a tax loss to the Government in the amount of $230,445.60 for 2013 and $251,828.92 for 2014. This produced a base offense level of 18. *See* U.S.S.G. § 2T1.1(a)(1); § 2T4.1. With a three-point reduction for acceptance of responsibility—resulting in a total offense level of 15—and a criminal history category of I, the result was an advisory Guidelines range of 18 to 24 months of imprisonment.

On December 2, 2021, Defendant filed five objections to the initial PSR. She did not dispute the Government's calculations based on her original filings in 2013 and 2014, but claimed that her *amended* filings for these years in 2021 showed that the actual loss was only $79,433 for 2013 and

$3,268 for 2014—which would produce a base offense level of 14, a total offense level 11, and an advisory Guidelines range 8 to 14 months of imprisonment. *See* U.S.S.G. § 2T1.1(a)(1); § 2T4.1. In an addendum filed December 10, 2021, the probation officer responded that the amending forms "were filed several years after the date of the offense and several months after the Indictment was filed." The probation officer also cited § 2T1.1(c)(5), which states "[t]he tax loss is not reduced by any payment of the tax subsequent to the commission of the offense." The first amended PSR corrected a typographical error in Defendant's 2014 gross receipts but was otherwise unchanged. It still showed the same total tax loss for both years as the original—a combined $482,274.

The government submitted a sentencing memorandum on January 13, 2022. The memorandum was prepared with the assistance of "records from the tax preparation software company and from the return processing bank to determine the amount of unreported gross receipts," and it concluded that Defendant underreported her gross receipts to the same extent found in the PSR. But it noted that the tax loss attributable to Defendant's underpayment was actually higher than that reported in the PSR—$292,773 for 2013 and $303,893 for 2014, for a total amount of $596,666. That's because the IRS replaced the standard 28% rate suggested by the Sentencing Guidelines with the higher federal marginal income tax rate of 39.6%—which the Government determined to be appropriate for underreported income and for "other adjustments that are required when recalculating the tax loss such as itemized deductions, exemptions phase outs, and self-employment tax." The memorandum also calculated appropriate restitution to be $547,043, with Defendant given credit for her past payments.

In the memorandum, the IRS also accepted the values in Defendant's amended 2013 filing because they were "close" to its own—despite certain improper deductions—and because of ongoing plea negotiations.

No. 22-30083

Nevertheless, it rejected the values in Defendant's amended 2014 filing, which it accused Defendant of filing in "an attempt to get her base level offense down." In response, Defendant claimed that she filed additional amendments in October, November, and December 2021 as well as an amended return in January 2022, which reduced the total net loss to just $44,877.

After reviewing the sentencing memorandum, the probation officer accepted the government's conclusions and revised the PSR accordingly. The third and final PSR calculated a total tax loss of $596,666 and a restitution amount of $547,043. The result was a base offense level of 20, a total offense level of 17, and an advisory Guidelines range of 24 to 30 months. Defendant subsequently filed a motion for a downward departure, again arguing that her amended returns result in a lower tax loss and that she therefore should have been assigned a lower base offense level.

At the sentencing hearing, the district court denied Defendant's motion for a downward departure and adopted the factual findings of the PSR. She was sentenced to 24 months of imprisonment and one year of supervised release. Defendant was further ordered to pay $547,043 in restitution pursuant to the Victim and Witness Protection Act, 18 U.S.C. § 3663. The court "arrived at that sentence after considering all the factors of [18 U.S.C. §] 3553, [Defendant's] excellent filings, [and the] filings of the government," and that "[i]n the event the [G]uideline determination … as stated in this case is found to be incorrect, [the court] would impose the same sentence based on the factors contained in [§] 3553." Defendant timely filed a notice of appeal.

## II.

A district court's calculation of the total tax loss is a factual finding that is reviewed for clear error, while the "method of calculation is an

application of the [G]uidelines that this court reviews de novo." *United States v. Bolton*, 908 F.3d 75, 95 (5th Cir. 2018) (citation omitted). "A factual finding is not clearly erroneous as long as it is plausible in light of the record read as a whole." *United States v. Dinh*, 920 F.3d 307, 310 (5th Cir. 2019) (quotations omitted). And "[w]here there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *United States v. Harris*, 740 F.3d 956, 967 (5th Cir. 2014) (quotations omitted).

According to the Guidelines, "[t]he sentencing judge is in a unique position to assess the evidence and estimate the loss based upon that evidence. For this reason, the court's loss determination is entitled to appropriate deference." U.S.S.G. §2B1.1 cmt. n.3(C); *see also United States v. Fairley*, 880 F.3d 198, 215 (5th Cir. 2018). Accordingly, "this court need only determine whether the district court made a reasonable estimate of the loss." *Bolton*, 908 F.3d at 95 (citation and quotations omitted). "To prevail on an argument that the district court's calculation of tax loss was clearly erroneous, a defendant must introduce evidence to contradict or rebut the alleged improper computation of the loss." *United States v. Johnson*, 841 F.3d 299, 303 (5th Cir. 2016). A district court's allegedly improper Guideline determination is harmless if the "district court considered both ranges (the one now found incorrect and the one now deemed correct) and explain[s] that it would give the same sentence either way." *United States v. Guzman-Rendon*, 864 F.3d 409, 411 (5th Cir. 2017); *see also United States v. Vega-Garcia,* 893 F.3d 326, 327–28 (5th Cir. 2018) (applying this principle after *Rosales-Mireles v. United States*, 138 S. Ct. 1897, 1907–08 (2018)).

This court "review[s] the quantum of an award of restitution for abuse of discretion." *United States v. Sharma*, 703 F.3d 318, 322 (5th Cir. 2012). The legality of a restitution award is reviewed de novo. *United States v. Villalobos*, 879 F.3d 169, 171 (5th Cir. 2018). Factual findings related to

restitution are reviewed for clear error. *Id.* "A factual finding is not clearly erroneous as long as it is plausible in light of the record read as a whole." *Dinh*, 920 F.3d at 310 (quotations omitted). This court may affirm "if the record provides an adequate basis to support the restitution order." *Sharma*, 703 F.3d at 322 (quotations omitted).

## III.

Defendant argues that the district court committed clear error by improperly calculating the total tax loss and the amount of restitution she owed to the IRS. Specifically, she claims that it was clear error for the district court to base its calculations on only the 2013 revision, and not to rely on her subsequent revised filings. Defendant emphasizes that her challenge is not to the method that the district court used to calculate the total tax loss and the restitution owed, but to the numbers that the calculation was based on. Because these initial figures did not take the later amendments into account, she claims that they were "stale and arbitrary."

## A.

The base offense level for a tax fraud offense is determined by calculating the loss that was the object of the offense. U.S.S.G. § 2T1.1(a); § 2T4.1. The Guidelines commentary states that when "the amount of the tax loss may be uncertain," the district court may make a "reasonable estimate" of the loss "based on the available facts." *See* § 2T1.1 cmt. n.1; *Johnson*, 841 F.3d at 303. According to the Guidelines, "[i]f the offense involved filing a tax return in which gross income was underreported, the tax loss shall be treated as equal to 28% of the unreported gross income . . . unless a more accurate determination of the tax loss can be made." § 2T1.1(c)(1)(A). The commentary clarifies that § 2T1.1(c)(1) offers "presumptions" which are "to be used unless the government or defense

provides sufficient information for a more accurate assessment of the tax loss." § 2T1.1 cmt. n.1.

That's exactly what happened here, with the first two iterations of the PSR using the 28% figure until the IRS report provided a more accurate assessment of the tax loss. And our case law demonstrates that the district court was on firm ground in using these submissions as a basis for its calculations. We have held that a PSR "bears sufficient indicia of reliability to be considered as evidence by the sentencing judge in making factual determinations." *United States v. Nava*, 624 F.3d 226, 231 (5th Cir. 2010) (quotation omitted). We have also held that a district court "may adopt the facts contained in a [PSR] without further inquiry if those facts have an adequate evidentiary basis with sufficient indicia of reliability and the defendant does not present rebuttal evidence or otherwise demonstrate that the information in the PSR is unreliable." *United States v. Trujillo*, 502 F.3d 353, 357 (5th Cir. 2007) (quotations omitted). And we have held that information provided by IRS agents contains sufficient indicia of reliability. *See United States v. Aubin*, 87 F.3d 141, 150 (5th Cir. 1996).

While Defendant maintains that her amended filings should have been considered in the total loss calculation, it is within the IRS's discretion to accept or reject an amended tax return. *Jones v. Comm'r*, 338 F.3d 463, 466 (5th Cir. 2003). The district court is also permitted to reject a defendant's calculation when it is "of doubtful reliability." *United States v. Montgomery*, 747 F.3d 303, 313 (5th Cir. 2014). Far from rejecting her filings wholesale, the IRS offered its rationale for accepting Defendant's June 2021 filing for the 2013 tax year while rejecting her amendments for the 2014 tax year—specifically, its concern that her 2014 amendments were filed "in an attempt to get her base level offense down." The IRS also gave Defendant the benefit of "a deduction for some refunds to taxpayers that were not included on [her] original return." But it also explained why it rejected some of the deductions

Defendant claimed in her amended filing. For example, it rejected the goods and services deduction because Defendant's business did not sell products. And it also disallowed a deduction for paid wages because Defendant did not file corresponding W-2s.

Even if the district court did err, any error was harmless. We have "repeatedly held that, when a district court entertains arguments as to the proper [G]uidelines range and explicitly states that it would have given the same sentence it did regardless, any error in the range calculation is harmless." *United States v. Nanda*, 867 F.3d 522, 531 (5th Cir. 2017). Here, the district court explicitly considered Defendant's argument for a lower Guidelines range, stating that it had taken her counsel's "excellent filings" into account. The district court then stated that "[i]n the event the [G]uideline determination . . . as stated in this case is found to be incorrect, [it] would impose the same sentence based on the factors contained in [18 U.S.C. § 3553]."

## B.

A district court "may . . . order restitution in any criminal case to the extent agreed to by the parties in a plea agreement." 18 U.S.C. § 3663(a)(3); *see also* § 3663(a)(1)(A). As part of the plea agreement, Defendant and the Government agreed that she "shall pay restitution to the [IRS] as a result of [her] fraudulent conduct. The parties further agree that restitution is owed for tax years 2013 and 2014, said restitution amount to be decided by the Court at sentencing, if the parties cannot agree to said amounts before sentencing." The plea agreement further provided that she agreed to pay restitution to the IRS "pursuant to 18 U.S.C. § 3663(a)(3)."

Defendant makes no restitution argument distinct from her Guidelines argument. But as we concluded in the Guidelines context, the final PSR—as updated to reflect the IRS report—provides a reliable factual

basis for establishing the loss figure. *See Nava*, 624 F.3d at 231; *Trujillo*, 502 F.3d at 357; *Aubin*, 87 F.3d at 150. Her arguments as to restitution thus fail for the same reason they failed in the Guidelines context—namely, that her filings are a suspicious attempt to lower her liability and claim deductions to which she was not entitled. *See Montgomery*, 747 F.3d at 313.

\* \* \*

We affirm.