# United States Court of Appeals
# for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

March 31, 2025

Lyle W. Cayce
Clerk

No. 24-60118

United States of America,

*Plaintiff—Appellee*,

*versus*

Adam Earnest; James Klish,

*Defendants—Appellants*,

CONSOLIDATED WITH

No. 24-60153

United States of America,

*Plaintiff—Appellee*,

*versus*

Christopher Randell,

*Defendant—Appellant*.

Appeals from the United States District Court
for the Southern District of Mississippi
USDC Nos. 3:22-CR-13-2, 3:22-CR-13-4,

3:22-CR-13-3

_____

Before ELROD, *Chief Judge*, and JONES and STEWART, *Circuit Judges*. CARL E. STEWART, *Circuit Judge*:

Tax fraud is risky business. In this case, Adam Earnest, Christopher Randell, and James Klish ("Defendants") prepared and filed tax returns that claimed millions of dollars in false education credits for their clients. They were charged, convicted, and sentenced to imprisonment for conspiring to defraud the United States and assisting in the filing of false returns. In this consolidated appeal, they allege several deficiencies in their trial and sentencing. For the following reasons, we AFFIRM.

## I.

### A. Factual Background

Earnest, Randell, and Klish prepared and filed tax returns for their clients through Sunbelt Tax Services ("Sunbelt"), a company owned and managed by Earnest. Prior to their work at Sunbelt, Earnest and Randell worked at American Tax Service ("American"). While working at American, they prepared fraudulent tax returns by improperly claiming education credits and falsifying various deductions.

In 2012, the IRS audited Earnest and Randell at American. During the audit, the IRS discovered that Earnest did not have supporting documentation for claimed Earned Income Tax Credits ("EIC") on client returns. As a result of those deficiencies, the IRS assessed Earnest with a $6,000 penalty. Unfortunately, he did not learn his lesson.

Two years later, in 2014, Earnest and Randell were audited again at American. And once again, Earnest was missing documentation to support client EICs. Worse still, Randell simply failed to produce records in response to the audit. Thus, the IRS assessed Earnest with a $236,500 penalty and Randell with a $414,000 penalty.

Undeterred by a quarter million dollar penalty, Earnest started his own tax preparation business later that year: Sunbelt. He recruited Randell, Jonathan Barefoot, and John Wells, Jr., all employees at American, to join him at Sunbelt. In the years that followed, he also hired Jessica Cella, Dwight Stamey, and Klish.

Earnest took several measures to avoid having his name associated with Sunbelt. First, he registered Sunbelt to electronically file tax returns with the IRS under the name of either a paid third party or his wife. Second, Earnest stopped preparing tax returns under his own name and Preparer Tax Identification Number ("PTIN"). Instead, he prepared returns and filed them under other employees' PTINs. Third, Earnest instructed Sunbelt employees to make it appear as though any false information in a tax return came from clients by having clients place their signatures on blank questionnaires, which could conveniently be filled out with fraudulent information at a later date.

Sunbelt tax preparers falsely reported that some of their clients were eligible for American Opportunity Tax Credits ("Education Credits"), even when those clients did not attend any college or university during the prior tax year. In total, Sunbelt filed 4,509 tax returns claiming $4,899,653 in Education Credits for which the IRS had not received a Form 1098-T from an educational institution. Sunbelt tax preparers also reported false charitable donations and unreimbursed employee business expenses under Schedule A, and false business income and expenses under Schedule C.

*B. Procedural History*

In February 2022, Defendants were charged with conspiring to defraud the United States by preparing and filing false tax returns and assisting in the preparation of false tax returns. After a seven-day trial, a jury found Earnest, Randell, and Klish guilty of conspiracy to defraud the United

States. It also found Earnest and Randell guilty of aiding and assisting in the preparation of a false tax return.

For sentencing, the government estimated a total tax loss of $10,078,767 across the conspiracy. In calculating this estimate, the government included returns filed by Earnest, Randell, Klish, Barefoot, Cella, and Stamey at both American and Sunbelt. In total, they filed 6,975 returns that claimed $10,078,767 in Education Credits without an accompanying Form 1098-T. The tax loss calculated by the government would have resulted in a base offense level of 26, as it was between the $9.5 million and $25 million thresholds in the Sentencing Guidelines' Tax Table. *See* U.S.S.G. §§ 2T1.1(a), 2T4.1(K), 2T4.1(L).

Earnest and Klish objected to the government's tax loss calculation at sentencing. They argued that any losses attributable to American's filings were not relevant conduct to the charged Sunbelt conspiracy. The district court overruled this objection. Earnest further objected that, because taxpayers were not required to collect Form 1098-Ts from clients before 2017, the fact that these forms were missing does not prove fraud. The district court agreed in part. Because the government's calculated loss amount of $10,078,767 was just over Section 2T4.1(K)'s $9.5 million threshold, the district court conservatively estimated the loss to be within the Tax Table's lower threshold of between $3.5 million and $9.5 million. *See* U.S.S.G. § 2T4.1(J). The district court explained that precisely calculating the losses attributable to the defendants would "essentially require an audit of thousands of tax returns." The district court also noted that the tax loss range that it estimated did not include any Schedule A or Schedule C losses. Thus, it considered the evidence "more than sufficient" to estimate that the tax loss exceeded $3.5 million.

4

Based on their offense levels, the Sentencing Guidelines ranges for Earnest and Klish were 121–151 months and 97–121 months, respectively. Varying downwards, the district court sentenced Earnest to 100 months' imprisonment and Klish to 50 months' imprisonment. Separately, the district court sentenced Randell to 70 months' imprisonment. They timely appealed and their cases were consolidated for our review.

## II.

Defendants raise several arguments on appeal: (A) they argue that the district court erred by admitting evidence of Earnest and Randell's conduct at American and by admitting a summary chart exhibit; (B) Earnest argues that the government "constructively amended" the indictment in violation of the Fifth Amendment; (C) Earnest argues that there was insufficient evidence to support his conviction for willfully aiding and assisting with the preparation of a false tax return; (D) Earnest argues that the district court erred by estimating the tax loss of the Sunbelt scheme to be between $3.5 million and $9.5 million; and (E) Klish argues that the district court erred in determining that he was not entitled to a mitigating role reduction. We address each of these arguments in turn.

### A. Evidentiary Rulings

Defendants first argue that the district court erred by admitting evidence of Earnest and Randell's conduct at American and by admitting a chart summarizing Defendants' fraudulent returns at Sunbelt. We disagree.

"We review the district court's evidentiary rulings for abuse of discretion, asking whether the court below relied on an erroneous view of the law or a clearly erroneous assessment of the evidence." *United States v. Smith*, 804 F.3d 724, 729 (5th Cir. 2015) (internal quotation marks omitted). Evidence of a "crime, wrong, or act" is not admissible to prove a person's character or propensity to commit a particular act, but is admissible for

"another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b)(1), (2). Courts can also exclude evidence when "its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, [or] misleading the jury." Fed. R. Evid. 403.

### 1. IRS Audits of American's Tax Preparers and Returns

Defendants first challenge the admission of evidence related to the IRS's 2012 and 2014 audits of Earnest and Randell while they worked at American. As discussed, Earnest was assessed monetary penalties in 2012 and 2014 for failing to provide supporting documentation for his clients' credits and deductions, and Randell was assessed a penalty in 2014 for failing to provide any records in response to the IRS's inquiry. The district court admitted evidence of these incidents under Rule 404(b). At trial, the government introduced 14 witnesses who testified about those audits and returns.

Defendants argue that this evidence does not fall under a Rule 404(b) exception and should have been excluded under Rule 403 as unduly prejudicial with little probative value. Earnest highlights that these audits and civil penalties were from a separate business, that they involved different credits under the tax code—EICs instead of Education Credits—and that there was no similar due diligence requirement for Education Credits at the time these audits were done. Defendants press that this evidence was presented to show that they had "a propensity for disobeying the tax laws." Additionally, Earnest argues that, because the allegations of tax fraud at American "consumed the trial," this court should reverse under *United States v. Fortenberry*, 860 F.2d 628 (5th Cir. 1988).

Defendants' arguments are unpersuasive. Consistent with the Fifth Circuit pattern instructions, the district court instructed the jury that to

sustain a conviction of conspiracy to defraud the United States, the government was required to prove beyond a reasonable doubt that Defendants acted with "intent to defraud." *See* Fifth Circuit, Pattern Jury Instructions (Criminal Cases) § 2.15(B) (2024). Evidence of Earnest's and Randell's conduct at American assisted it in doing so. As discussed, at American, Earnest and Randell were assessed hundreds of thousands of dollars in penalties for filing tax forms that fraudulently claimed EIC credits without supporting documentation. Similarly, at Sunbelt, preparers filed tax forms that fraudulently claimed Education Credits without supporting Form 1098-Ts. Moreover, the evidence of audits and penalties at American demonstrates that Earnest and Randell were generally aware of tax preparer due diligence documentation requirements and their consequences, and thus could fall under multiple Rule 404(b) exceptions, such as lack of accident, absence of mistake, knowledge, or intent. *See* Fed. R. Evid. 404(b).

Earnest's argument for reversal under *Fortenberry* is also meritless. In *Fortenberry*, the defendant was charged with having placed a small device in an unoccupied car, which did little damage to the car. 860 F.2d at 632. But the jury heard extensive testimony about three attacks with crossbow arrows, three incidents of arson, and an act of vandalism with a gun. *Id.* This court held that the unfair prejudicial effects of the evidence of those unrelated incidents substantially outweighed its probative value for a charge of "plac[ing] a small device in an unoccupied car." *Id.* In doing so, we reasoned that the government failed to establish that the defendant committed those offenses, which were distinct from the indicted conduct. *See id.* at 631–33. Here, however, the government introduced evidence of almost identical

7

24-60118
c/w No. 24-60153

prior conduct—claiming tax credits without supporting documentation—by Earnest and Randell. Thus, *Fortenberry* is disanalogous.[1]

Klish argues that he never worked at American, and only joined Sunbelt in late 2015 or early 2016. He thus contends that evidence of Earnest and Randell's misconduct at American prejudiced the jury against him through "guilt by association." We disagree.[2] The district court gave several instructions explaining the limited relevance of the evidence related to American. Moreover, the district court specifically instructed the jury that "[t]here are no crimes charged in this case related to any returns prepared at [American], so you must not consider any of this evidence in deciding if these defendants committed the acts charged in the indictment related to Sunbelt." The district court further instructed the jury that "each defendant should be considered separately and individually." We generally assume that "jurors can be relied upon to follow the trial judge's instructions." *Samia v. United States*, 599 U.S. 635, 646 (2023). Klish provides us no reason to abandon that practice now. Because the district court's numerous instructions sufficiently mitigated the risk to Klish of "guilt by association," it did not abuse its discretion in admitting evidence of IRS audits of Earnest and Randell at American. *See id.*

---

[1] The government produced multiple witnesses that testified to Earnest's and Randell's activities at American, including three IRS agents, American clients, and American employees. However, every testifying American client was also a Sunbelt client, and one of the American employees that testified was also employed at Sunbelt. The government correctly notes that the overlap between Defendants' activities at American and Sunbelt is probative of their *mens rea* in proving their intent to file false returns.

[2] To be sure, the district court acknowledged that "[t]he evidence with respect to [Klish] is not as strong as it is for the other defendants." But it nonetheless properly concluded that "there's enough to go to the jury here on the conspiracy."

*2. Exhibit 605*

Earnest also challenges Exhibit 605, a summary chart of 4,095 tax returns prepared by Sunbelt that claimed an Education Credit without a supporting Form 1098-T. Nine Sunbelt clients testified at trial, and the exhibit contained the tax returns of Sunbelt's thousands of other clients who did not testify. Earnest argues that because return preparers were not required to obtain a Form 1098-T from clients for Education Credits prior to 2017, "there is no way for the jury to know whether the customers or defendants were the source of the allegedly false education credits reflected in the summary." Earnest also argues that this evidence was inadmissible under Federal Rules of Evidence 1006 and 702, and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993). Earnest concludes that the exhibit "lacked relevance absent expert statistical testimony." In response, the government contends that Exhibit 605 was admissible without expert testimony because it merely summarized information from collected tax returns by "totaling the number of returns filed by Sunbelt in the relevant period that claimed an education credit for which the IRS did not receive a Form 1098-T."

The government is correct. "[W]hen a chart does not contain complicated calculations requiring the need of an expert for accuracy, no special expertise is required in presenting the chart." *United States. v. Jennings*, 724 F.2d 436, 443 (5th Cir. 1984). Here, the government's chart simply added up a compiled number of returns. Basic addition is hardly a complex calculation. Thus, the district court correctly concluded that Exhibit 605 was "not expert in nature."

Earnest provides no authority to support his implicit argument that only tax returns from testifying clients should be allowed into evidence. This conspiracy encompassed thousands of returns from thousands of clients. To

require each and every one of those clients to testify would lead to undue delay and a waste of judicial resources. The purpose of Rule 1006 is to admit summaries to prove the content of "voluminous admissible writings, recordings, or photographs that cannot be conveniently examined in court." FED. R. EVID. 1006(a). To require each client to testify about their tax return would plainly undermine that purpose. Thus, the district court did not abuse its discretion by allowing Exhibit 605 into evidence.[3]

### 3. Cumulative Error

Earnest also contends that the "cumulative error doctrine" compels reversal, implying that he did not receive the "fair trial that he is entitled to under the law." *United States v. Labarbera*, 581 F.2d 107, 110 (5th Cir. 1978). Here, too, we disagree. Earnest does not cite any cases where similar facts have led to a cumulative-error reversal. And as discussed, he has provided no errors to accumulate. Thus, Earnest's attempt to invoke the cumulative error doctrine to exclude properly admitted evidence is unavailing. *See United States v. Delgado*, 672 F.3d 320, 344 (5th Cir. 2012) ("[N]on-errors have no weight in a cumulative error analysis.").

### B. Constructive Amendment

Earnest next argues that the government constructively amended the indictment in violation of the Fifth Amendment. It did not.

Typically, "[t]his [c]ourt reviews a constructive amendment claim *de novo*." *United States v. Bennett*, 874 F.3d 236, 256 (5th Cir. 2017). However, when a defendant "fail[s] to contemporaneously object to the alleged

---

[3] We are unpersuaded by Earnest's argument that Sunbelt's lack of documentation for Education Credits, as shown in Exhibit 605, does not fully prove fraud in this case. As the district court explained, "the lack of documentation for these credits remains probative of a pattern of claiming unwarranted education credits."

constructive amendment of her indictment, we review her objection for plain error." *United States v. Isgar*, 739 F.3d 829, 840 (5th Cir. 2014). When reviewing a claim of constructive amendment, we are "mindful to distinguish between a constructive amendment, which is reversible per se, and a variance between the indictment and proof, which we examine for harmless error." *Bennett*, 874 F.3d at 256 (internal citations and quotation marks omitted). Thus,

> [w]e scrutinize any difference between an indictment and a jury instruction and will reverse only if that difference allows the defendant to be convicted of a separate crime from the one for which he was indicted. Otherwise, we review the purported amendment as a variance, and the defendant must show how the variance in the language between the jury charge and the indictment so severely prejudiced his defense that it requires reversal under harmless error review.

*Id.* at 256 (quoting *United States v. Jara-Favela*, 686 F.3d 289, 300 (5th Cir. 2012)).

Earnest first claims that the government constructively amended the indictment by "elicit[ing] testimony that [he] was also guilty of an uncharged tax fraud conspiracy at [American] going back to 2010," when the indictment only charged conduct at Sunbelt from 2015 to 2022. He contends that the evidence from American "went far beyond the permissible uses under [Rule] 404(b) and resulted in Earnest standing trial on an uncharged crime." In response, the government first points out that Earnest did not raise this objection until his motion for a new trial, meaning we review for plain error. *See United States v. Isgar*, 739 F.3d 829, 840 (5th Cir. 2014). Second, it

contends that clear jury instructions ensured that Earnest was only on trial for the conduct alleged in the indictment. *See* Fed. R. Evid. 105.

We agree with the government. The indictment charged Earnest with tax fraud conspiracy from 2015 to 2022 while at Sunbelt. The district court gave the following jury instructions in introducing the charges: "[the] charges all relate to returns prepared at [Sunbelt] beginning in 2015," and "[d]efendants are not on trial for any act, conduct, or offense not alleged in the indictment." As discussed, the district court specifically instructed the jury that "[t]here are no crimes charged in this case related to any returns prepared at [American], so you must not consider any of this evidence in deciding if these defendants committed the acts charged in the indictment related to Sunbelt." These jury instructions ensured that the only conduct on which the jury could convict Defendants was conduct that occurred at Sunbelt. "[T]he instructions did not permit a conviction based on a theory or set of facts materially different from that charged in the indictment," and thus there was no constructive amendment by the introduction of evidence of similar misconduct at American. *See United States v. McMillan*, 600 F.3d 434, 452 (5th Cir. 2010).

Earnest's second constructive amendment claim is similarly meritless. He claims that, for Counts Five and Seven of the indictment, the charges alleged fraudulent "deductions," but that the evidence presented alleged fraudulently claimed "credits" instead. Earnest is correct that paragraph 19 of the indictment alleged that the returns claimed fraudulent "deductions." But the same paragraph also included a table which specified the "falsely claimed item[s]" as "Education Credit[s]." Because the language of the indictment expressly charged Earnest with preparing returns that included fraudulent "Education Credit[s]," there was no constructive amendment when the jury convicted Earnest of doing just that. Further, although the indictment used both terms—"deductions" and

12

"credits"—Earnest has not shown that this variance in language "so severely prejudiced his defense that it requires reversal." *See Bennett*, 874 F.3d at 256. Thus, the district court did not err—let alone plainly err—by allowing evidence of fraudulently claimed credits.

### C. Sufficiency of the Evidence

Earnest also argues that there was insufficient evidence to support his conviction on Count Seven of the indictment, which alleged that he willfully aided and assisted with the preparation of a false tax return. We disagree.

This court reviews a preserved sufficiency of the evidence claim *de novo*, but we are "highly deferential to the verdict." *United States v. Bolton*, 908 F.3d 75, 89 (5th Cir. 2018). "[I]f, after viewing the evidence and all reasonable inferences in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," "[t]his court must affirm a conviction." *United States v. Sertich*, 879 F.3d 558, 565 (5th Cir. 2018) (emphasis in original) (internal quotation marks omitted) (quoting *United States v. Grant*, 850 F.3d 209, 219 (5th Cir. 2017)).

Earnest argues that there was insufficient evidence to support the conclusion that he willfully aided and assisted with the preparation of a false tax return for Wanda Stamps for the 2016 tax year. According to IRS records, Stamps had three returns prepared by Sunbelt. Stamps testified at trial that Barefoot prepared two of these returns and Earnest prepared one, but she was unable to remember precisely who prepared each return. Barefoot is listed on Stamps's returns for tax years 2014 and 2015. Stamey's PTIN is listed on the 2016 return, but Stamps testified that she never met Stamey. As noted above, Earnest often prepared and filed returns under the names of Sunbelt employees. A rational fact finder could infer that Earnest prepared

the 2016 return under Stamey's identity. Thus, the evidence was sufficient to sustain Earnest's conviction on Count Seven. *See Sertich*, 879 F.3d at 565.

### D. Tax Loss

Earnest argues that the district court erred by estimating the tax loss of the Sunbelt scheme to be somewhere between $3.5 million and $9.5 million. Again, we disagree.

"This court reviews a district court's calculation of tax loss for clear error." *United States v. Johnson*, 841 F.3d 299, 303 (5th Cir. 2016). The district court's method of determining the amount of loss, however, is reviewed *de novo*. *United States v. Harris*, 597 F3d 242, 251 (5th Cir. 2010); *United States v. Ritchey*, 117 F.4th 762, 766 (5th Cir. 2024).

The amount of tax loss contributes to the base sentencing level under the Sentencing Guidelines. *See* U.S.S.G. § 2T1.1(a). When the amount of tax loss is "uncertain," the court may "make a reasonable estimate based on the available facts." U.S.S.G. § 2T1.1, Application Note 1. The base offense level for a sentence shall be determined on the basis of all "acts and omissions" that were "part of the same course of conduct or common scheme or plan as the offense of conviction." U.S.S.G. § 1B1.3(a)(2). "[T]he relevant conduct considered in selecting the base offense level is not limited to the conduct constituting the underlying criminal offense." *United States v. Powell*, 124 F.3d 655, 664 (5th Cir. 1997). In determining whether conduct is "relevant" for sentencing purposes, we consider the "temporal proximity, similarity, and regularity." *Id.* at 666; U.S.S.G. § 1B1.3(a)(2), Application Note 5(B).

Earnest claims that the district court erred by (1) including any tax returns from before 2017, because there was no requirement to collect Form 1098-Ts from taxpayers and thus no guarantee that these credits were

fraudulently claimed; and (2) by including any tax loss from returns prepared by American employees. We are unpersuaded.

To Earnest's first contention, we have addressed a similar claim in a recent unpublished opinion. In *United States v. Patel*, the defendant was convicted of a similar scheme involving returns claiming fraudulent education credits without supporting documentation and argued that the district court's tax loss calculation should not have included all tax returns that did not have a supporting Form 1098-T. *See* 789 F. App'x 981, 982 (5th Cir. 2019) (unpublished). We acknowledged that the district court's tax loss estimate was "imperfect," but nonetheless affirmed because the defendant did not show that its tax loss estimate was unreasonable. *Id.* at 984–85. The same logic applies here. As an unpublished opinion, *Patel* is not precedent in this court, *see* 5th Cir. R. 47.5.4, however it is useful to compare the cases to show the consistency of our analysis.

Earnest attempts to distinguish *Patel* by observing that the defendant in that case did not raise the argument that he was not required to get a Form 1098-T from the taxpayers, as Earnest does here. But he makes no attempt to argue or present evidence that the pre-2017 Education Credit claims were legitimate. To the contrary, there is evidence that Sunbelt did not have Form 1098-Ts when it was required to, and, in the absence of any countervailing evidence, the district court did not clearly err in estimating that credits claimed before the 2017 due diligence requirement fell into the same pattern. *See Johnson*, 841 F.3d at 303 ("To prevail on an argument that the district court's calculation of tax loss was clearly erroneous, a defendant must introduce evidence to contradict or rebut the alleged improper computation of the loss."). Sunbelt preparers claimed $4,899,653 of Education Credits without Form 1098-Ts. The district court reduced the tax loss estimate for any uncertainty and did not include any Schedule A or Schedule C losses. Those downward estimates further underscore that the district court's

15

calculated tax loss was conservative and reasonable. Thus, it did not clearly err in calculating the tax loss to exceed $3.5 million. *See id.*

Earnest's argument that the district court erred by including returns prepared by American employees also fails. He contends that the conduct at American and the charged scheme at Sunbelt were not part of the same "course of conduct or common scheme." He argues that the "*modus operandi* alleged by the government [differs] between the two businesses" because American was "a business that failed to keep adequate records," and Sunbelt was "a business that kept detailed records[.]"But Earnest's characterization of the schemes at Sunbelt and American is belied by the record. Both companies failed to collect and provide records to justify tax credits that were claimed on client returns.

Moreover, the conduct at American was temporally close to the conduct at Sunbelt, similar in nature, and occurred with regularity. The district court also correctly considered the guidance in U.S.S.G. § 2T.1 specific to tax fraud, and found that "[t]he defendants carried the exact same scheme from [American] to Sunbelt, so there was a continuing pattern using the same methods with, in many cases, the same taxpayers and tax preparers. False deductions or credits at both places were the same." To be sure, there is some separation between the conduct at Sunbelt and the conduct at American, and the indictment only charged conduct at Sunbelt. But as noted, Sunbelt preparers alone prepared over 4,500 returns and claimed nearly $5 million in Education Credits without supporting documentation. Thus, even discounting the American returns entirely, the district court did not

clearly err by finding that the estimated tax losses exceeded $3.5 million. *See Johnson*, 841 F.3d at 303.

### E. Mitigating Role Reduction

Finally, Klish argues that the district court erred by finding that he was not entitled to a mitigating role reduction. We disagree.

This court reviews a district court's application of the Sentencing Guidelines *de novo* and accompanying factual findings for clear error. *See United States v. Pena*, 91 F.4th 813, 817 (5th Cir. 2024). Klish is entitled to a mitigating role adjustment if he can show by a preponderance of the evidence "(1) the culpability of the average participant in the criminal activity; and (2) that [he] was substantially less culpable than that participant." *United States v. Castro*, 843 F.3d 608, 613 (5th Cir. 2016) (applying U.S.S.G. § 3B1.2). "It is improper for a court to award a minor participation adjustment simply because a defendant does less than the other participants. Rather, the defendant must do enough less so that he at best was peripheral to the advancement of the illicit activity." *United States v. Thomas*, 932 F.2d 1085, 1092 (5th Cir. 1991).

Klish has not shown that he is entitled to a mitigating role reduction. He contends that he did not organize the scheme, had no decisionmaking authority, and prepared fewer returns than others, resulting in less personal profit. He does not, however, attempt to establish the baseline culpability of the "average participant" against which to compare his involvement, and he certainly does not show that he was "peripheral" to the scheme. *See id.* By his own admission, Klish prepared 547 returns claiming unsupported credits. As he points out, there are Sunbelt employees who filed more unsupported returns. But there are also Sunbelt employees who filed fewer unsupported returns. Klish does not show that he is less culpable than the "average participant." In reviewing the § 3B1.2 factors, the district court found that

Klish "understood the scope and structure of the scheme," "was no more or less involved in the planning . . . than other participants," "made decisions on each fraudulent return," and made the same commission as other conspirators. Klish provides no evidence to refute these findings. Thus, the district court did not err in concluding that Klish is not entitled to a mitigating role reduction. *See id.*

## III.

For the foregoing reasons, we AFFIRM the district court's judgment in full as to all defendants.